IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Avalon Country Club at Sharon, Inc., :
                Petitioner     :
                                   :
              v.               : No. 1691 C.D. 2015
                                   : Argued: April 12, 2016
Department of Health, Bureau of    :
Health Promotion and Risk         :
Reduction,                    :
                 Respondent    :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                  HONORABLE ROBERT SIMPSON, Judge
                  HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI                FILED:  May 2, 2016


        Avalon Country Club at Sharon, Inc. (Avalon) has appealed the Pennsylvania Department of Health's (Department) denial of its request for exception from the Clean Indoor Air Act's (CIAA)[1] general prohibition against smoking in public places by allowing it to operate a tobacco shop and cigar bar at its facility located at 1030 Forker Boulevard, Hermitage, Pennsylvania.  We affirm.[2]

---

[1] Act of June 13, 2008, P.L. 182, 35 P.S. §§637.1-11.

[2] This matter was decided without a hearing and the parties agree that no facts are in dispute.

Section 3(a) of the CIAA provides that "an individual may not engage in smoking in a public place." 35 P.S. §637.3(a). Pursuant to Section 2 of the CIAA, a public place includes an enclosed area which serves as a commercial establishment or an area where the public is invited or permitted, including a facility which provides food services. Section 3(b) of the CIAA provides for the exceptions to this general prohibition, which include, *inter alia*, tobacco shops and cigar bars. 35 P.S. §§637.3(b)(3), (9).

On September 5, 2008, Avalon filed with the Department's Bureau of Health Promotion and Risk Reduction (Bureau) two applications for exceptions. The first exception sought by Avalon was for a Tobacco Shop, which is allowed by Section 3(b) of the CIAA, 35 P.S. §637.3(b)(3). Section 2 of the CIAA defines a "Tobacco Shop" as follows:

> 'Tobacco shop.' A business establishment whose sales of tobacco and tobacco-related products, including cigars, pipe tobacco and smoking accessories, comprise at least 50% of the gross annual sales. This term does not include a stand-alone kiosk or establishment comprised solely of cigarette vending machines.

35 P.S. §637.2. The second exception sought by Avalon was to operate a Type I Cigar Bar in the same building as the Tobacco Shop.[3] Section 3(b) of the CIAA, 35 P.S. §637.3(b)(9). Section 2 of the CIAA defines a Type I Cigar Bar as:

---

[3] A Type II exception is allowed by subsection (2) of the definition. It allows a cigar bar to apply for an exception before, on or after September 11, 2008, the effective date of the CIAA, if the establishment meets the following requirements: (1) the establishment has a valid restaurant liquor license or an eating place retail dispenser license; and (2) the establishment has total annual sales of tobacco products, including tobacco, accessories or cigar storage lockers or humidors, of at least **(Footnote continued on next page…)**

> (1) An establishment which, on the effective date of this section, operates pursuant to an eating place retail dispenser's or restaurant liquor license under the act of April 12, 1951 (P.L. 90, No. 21), known as the Liquor Code, and is physically connected by a door, passageway or other opening and directly adjacent to a tobacco shop.

35 P.S. §637.2 (citation omitted). As can be seen, Avalon's applications for exceptions are intertwined because, without an approved exception to operate a Tobacco Shop, Avalon cannot operate a Type I Cigar Bar.

In its Tobacco Shop exception application, Avalon represented that it met all of the criteria because the Tobacco Shop that it proposed was a business establishment, and its sales of tobacco and tobacco-related products, including cigars, pipe tobacco and smoking accessories, were equal to or greater than fifty percent (50%) of the gross annual calendar year sales of that establishment's sales.

As to the Cigar Bar exception application, Avalon contended that it met all of the Type I Cigar Bar requirements because it had a valid restaurant liquor license, it was physically connected by a door, passageway or other opening, and it was directly adjacent to a tobacco shop. As part of the application, Avalon included a no objection letter to the Cigar Bar application from the Pennsylvania Liquor Control Board (PLCB). That letter identified 13 serving areas in the restaurant where alcohol could be served, of which Avalon identified four of those areas as the "Cigar Bar." One area (consisting of an area that is 33' x 16' x 20' x 13') was the location of the

---

**(continued…)**

fifteen percent (15%) of the combined gross sales of the establishment. Section 2 of the CIAA, 35 P.S. §637.2.

3

proposed Tobacco Shop, a U-shaped area with open doors that lead to the main lobby of the country club. There is also an entrance into the Cigar Bar from the lobby. The remaining areas identified by Avalon were part of a non-smoking restaurant. No walls separate the smoking and non-smoking sections of the "Cigar Bar" from the restaurant; rather, the Cigar Bar portion is merely separated from the non-smoking areas of the restaurant by a large bar. (Finding of Fact 12.)

After one of its agents visited the premises, the Bureau denied both of Avalon's exceptions by letter dated October 1, 2009. The letter denied the Cigar Bar application because the identified smoking area did not comply with the statutory requirement that it must be physically separate from the eating area and did not have a separate air system or a separate outside entrance. As to the Tobacco Shop application, the Bureau found that application deficient because it did not include food, alcohol or other sales that are usually generated at a business establishment of a country club such as Avalon, making it impossible to calculate whether the Tobacco Shop projected sales met fifty percent (50%) or more of the gross sales requirements. On October, 7, 2009 Avalon filed a petition for reconsideration which, on March 19, 2010, the Bureau denied for the same reasons. Avalon timely appealed the Bureau's denial of the exception requests to the Secretary of Health on March 24, 2010.

For reasons not explained, the Department did not certify the record until September 8, 2014. Avalon was permitted to supplement the record with an affidavit from its Chief Administrative Officer stating that the Tobacco Shop was being operated by Havana Cigar Shop, Inc., a separate legal entity formed by Avalon for the sole purpose of complying with the CIAA. This was the first time it informed the PLCB that it was not the applicant. By having a separate corporation – *albeit* wholly

4

owned by Avalon – Avalon was not the actual operator of the Tobacco Shop. As a result, it contended that it did not need to include Avalon's sales in the Tobacco Shop's projected revenue. The Department then requested that Avalon submit additional evidence regarding its corporate governance.

The Department denied the appeal, finding that Avalon failed to establish that it is entitled to an exception for a tobacco shop under Section 3(b)(3) of the CIAA, 35 P.S. §637.3(b)(3), because the Havana Cigar Shop, Inc. and not Avalon is the party of interest entitled to seek an exception for the Tobacco Shop. It also found that Avalon failed to meet its burden of proof that it is entitled to an exception to operate a cigar bar under Section 3(b)(9) of the CIAA, 35 P.S. §637.3(b)(9), because the proposed Cigar Bar is located within a restaurant and is not connected to or adjacent to the Tobacco Shop. Avalon filed this appeal, though not challenging any of the Findings of Fact, contending that the Department erred in denying the exceptions for both the Tobacco Shop and the Cigar Bar.

**I.**

**A.**

Regarding the Cigar Bar, Avalon contends that the Department erred in finding that it is not "physically connected by a door, passageway, or other opening and directly adjacent to a tobacco shop." Section 2 of the CIAA, 35 P.S. §637.2. The Department takes the position that the Cigar Bar is not "adjacent" to the Tobacco Shop because adjacent means "lying near or close to, but not necessarily touching." According to the Department, because the Tobacco Shop is within the same building as the country club, the Cigar Bar cannot be "adjacent to" the Tobacco Shop. However, just because a tobacco shop is in the same building does not mean that it

5

cannot be physically connected or adjacent to a cigar bar. Having not otherwise contended that it is not adjacent to the Tobacco Shop, we find the Department erred in denying the application for the Cigar Bar on this basis.

**B.**

Even if it was adjacent to the Tobacco Shop, the Cigar Bar exception would still be denied based on the Department's finding that a cigar bar cannot be located in a restaurant. Avalon contends that under Section 2 of the CIAA, 35 P.S. §637.2, a "cigar bar" is defined as "[a]n establishment which … operates pursuant to an eating place retail dispenser's or restaurant liquor license ... and is physically connected by a door, passageway or other opening and directly adjacent to a tobacco shop." According to Avalon, this definition means that it can operate a cigar bar within a restaurant. Avalon notes that this definition does not require that a cigar bar be housed in its own separate building. In essence, what it is arguing is if you are granted an exception for a tobacco shop, then you can operate a cigar bar in an establishment with a restaurant liquor license with both smoking and non-smoking sections.

While we agree with Avalon that a cigar bar may operate in a restaurant with a retail liquor license, that does not mean that Avalon can operate a cigar bar in a restaurant with a retail liquor license that has both smoking and non-smoking sections. What it means is that the entire Cigar Bar smoking area must be permitted everywhere throughout the restaurant with the retail liquor license.

What is proposed by Avalon, a restaurant with smoking and non-smoking sections, is not a cigar bar, but a normal restaurant which is a "public place."

6

As defined in Section 2 of the CIAA, 35 P.S. §637.2, a public place is "an enclosed area which serves as a workplace, commercial establishment or an area where the public is invited or permitted." This includes, among other things, a facility which provides "food," i.e., a restaurant. No smoking is permitted in an establishment that serves food – even if it has a retail liquor license – unless it falls within the exception set forth in Section 3(b)(10) of the CIAA, 35 P.S. §637.3(b)(10), which allows smoking in a drinking establishment.

> Section 2 of the CIAA defines a Type II Drinking Establishment as:
>
> An enclosed area within an establishment which, on the effective date of this section:
>
> i. Operates pursuant to an eating place retail dispenser's license, restaurant liquor license or retail dispenser's license under the Liquor Code [Act of April 12, 1951 (P.L. 90, No. 21)];
>
> ii. Is a physically connected or directly adjacent enclosed area which is separate from the eating area, has a separate air system and has a separate outside entrance;
>
> iii. Has total annual sales of food sold for on-premises consumption of less than or equal to 20% of the combined gross sales within the permitted smoking area of the establishment; and
>
> iv. Does not permit individuals under 18 years of age.

35 P.S. §637.2. The statutory scheme then is that a public place that has a retail or restaurant liquor license should be smoke free unless it is (1) a "cigar bar" where smoking is allowed everywhere, or (2) a "drinking establishment" which may be

7

adjacent to a restaurant but is a separately enclosed space with a separate ventilation system that protects customers in the smoke-free area from coming into contact with that smoke.

Because Avalon's Cigar Bar exception application does not propose to have smoking everywhere in the restaurant, it does not fall within the exception, and the Department properly denied the exception on that basis alone.

**II.**

Avalon contends that the Department erred in denying the exception for the Tobacco Shop because, although it applied for the exception, Havana Cigar Shop, Inc. was the owner/operator. The Department based its denial on Section 3(c) of the CIAA, 35 P.S. §637.3(c), which states that in order to obtain an exception to the CIAA's smoking ban, "a drinking establishment, cigar bar or tobacco shop must submit a letter, accompanied by verifiable supporting documentation, to the department claiming an exception." The evidence is undisputed that Avalon's Board of Directors established a Tobacco Shop as a separate legal entity called the Havana Cigar Shop, Inc.

We agree with the Department that Section 3(c) of the CIAA requires that an application for a tobacco shop exception be submitted by the owner/operator. As the Department points out, it does make a difference here because whoever applies for the exception must establish that the sales of tobacco do not exceed fifty percent (50%) of its gross annual sales. If Avalon is the applicant, Avalon must submit the application and establish that its sales of tobacco exceed fifty percent (50%) of its gross annual sales – which it has failed to do. If, as Avalon claims, the

8

Havana Cigar Shop, Inc. is the actual applicant, it must be the one to submit an application for an exception. It argues that it should not be required to guess.

Who is the applicant here also makes a difference as to whether we have jurisdiction over this matter. If, as the Department claims, Avalon is the applicant, we will affirm the Department's decision because Avalon has not made out that sales of tobacco exceed fifty percent (50%) of its gross annual sales. However, if Havana Cigar Shop, Inc. is the applicant, we must quash the appeal because Havana Cigar Shop, Inc. has not appealed that determination to us. Because we should not be forced to guess and the only party before us is Avalon, we will affirm the Department's denial of Avalon's application for a Tobacco Shop for the reasons stated.

Accordingly, for the foregoing reasons, we affirm the Department's decision.

_____
DAN PELLEGRINI, Senior Judge

Judge Simpson concurs in the result only.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Avalon Country Club at Sharon, Inc., :
                Petitioner       :
                                       :
                v.              : No. 1691 C.D. 2015
                                         :
Department of Health, Bureau of   :
Health Promotion and Risk        :
Reduction,                           :
                Respondent    :


# **O R D E R**


AND NOW, this 2nd day of May, 2016, it is hereby Ordered that the decision of the Department of Health, Bureau of Health Promotion and Risk Reduction, is affirmed.


                                    _____

                                      DAN PELLEGRINI, Senior Judge